## ALLEN AND WIFE vs. PRATER.

[ACTION ON PROMISE TO PAY IN COMPROMISE OF LEGAL CONTROVERSY.]

1. *What constitutes pending suit.*—A proceeding for the probate of a will does not assume the form of a pending suit *inter partes*, although notices have been served on the heirs-at-law, and they have employed counsel to contest the probate, until they have made themselves parties in the mode provided by law.

2. *Sufficiency of compromise as consideration of contract.*—A verbal promise to pay in compromise and settlement of a controversy which has not assumed the form of a pending suit, is without consideration, unless there was some reasonable ground for the existence of the controversy.

3. *Proof rebutting reasonable ground for controversy.*—In an action on a promise to pay in compromise of a controversy respecting the validity of a will, the will itself, and proof of the value of the property embraced in it, and of the advancements made by the testator in his life-time to any of his children, are competent evidence for the defendant, in rebuttal, to show that the provisions of the will were just and reasonable, consonant with the state of the testator's family relations, and such as afforded no real ground of controversy.

4. *Construction of special contract.*—In an action on a verbal promise by defendants, in consideration that plaintiffs would not contest the validity of their common ancestor's will, " to pay plantiffs a sum of money sufficient to make them equal to the share which the defendants each received under the will, less $100," neither the value of slaves given by the testator in his life-time to one of the plaintiffs, but which did not belong to said plaintiff at the time the will was executed, or when the defendants' promise was made

12

nor the value of slaves given by the testator in his life-time to the children of one of the plaintiffs, can properly be estimated in ascertaining the amount due to the plaintiffs under the contract.

APPEAL from the Circuit Court of Bibb.

Tried before the Hon. NAT. COOK.

THIS action was brought by Memory Allen and Elizabeth, his wife, against John B. Prater, James Prater, and Andrew J. Prater; and was founded on the defendants' verbal promise to pay $1,000, in consideration that plaintiffs and one Susan Miller would not contest the probate of the will of John Prater, deceased, (who was the father of Mrs. Prater, Mrs. Miller, and the defendants,) but would allow the same to be admitted to probate without objection. No pleas are shown by the record. The case was before this court, on a former appeal by the plaintiffs, at the January term, 1857, when the judgment of the circuit court was reversed, and the cause remanded.—See 30 Ala. 458.

On the trial at the April term of the circuit court, 1857, as the bill of exceptions in the present record shows, "the following proceedings were had : The plaintiffs introduced three witnesses, who testified that, on the 1st October, 1850, J. B. Prater and A. J. Prater, two of the defendants, propounded for probate, before the probate judge of Benton county, a paper purporting to be the last will and testament of John Prater, deceased; that the plai██ffs then orally objected to the probate of said paper, and proposed to contest the same, and employed counsel to contest the probate; that on the day set by the court for the probating of the same, the plaintiffs were present in court, with their counsel, for the purpose of contesting the probate; that the defendants, who were present in court, then proposed a compromise, and orally agreed and promised that, if plaintiffs would further desist from contesting the probate of said will, and suffer said will to be probated without further objections, defendants would pay plaintiffs a sum of money sufficient to make them equal to the share that defendants each received under the said will, less 100 ; and that plaintiffs, upon said oral promise

of defendants, retired from the court-room, with their counsel, and made no further objections to the probate of said will."

" The plaintiffs also introduced evidence," after having read the minutes of the probate court showing the proceedings connected with the probate of the will, "tending to prove that the defendants each received, under the will of said John Prater, a large sum more than plaintiffs received; and that it would require the sum of —— dollars to make plaintiffs equal, less $100, to the share received by each of the defendants under the will. There was proof, also, conducing to show that Mrs. Elizabeth Prater, a daughter of the testator, in the year 1838 married a man by the name of Lively; that the said testator, upon the marriage of the said Elizabeth, gave her a negro girl, named Mary, who went into the possession of the said Elizabeth and her then husband, and, while in their possession, gave birth to a child, a boy called Daniel; that said Lively died after several years, leaving two children, and said slaves soon afterwards went into the possession of said testator; that after the marriage of said Elizabeth with Memory Allen, her present husband, the said Memory qualified as guardian of said two children, and, as such guardian, demanded the said slaves from the testator; and that the testator delivered said slaves to him, as such guardian, several years before the execution of said will. The proof further conduced to show that, at the sime of making said will, the said testator was seventy-six years old; and that when he executed said will, he started off, walked some steps, turned round, and said, ' I have done that to keep peace, and I hope there will be peace when I am gone.' Also, that each of the defendants was in easy and prosperous circumstances, was well settled, and owned a handsome estate of lands and negroes, while the plaintiffs were poor; that Mrs. Prater, prior to her marriage with said Allen, was dependent for her support upon her father, the said testator; that Mrs. Miller, another daughter of the testator, was a widow, with four young children to support, and was dependent upon her said father for aid to support herself and her children; and

that the land mentioned in the will as a bequest to Mrs. Miller was worth only $300. The plaintiffs also read in evidence to the jury the parts of said will containing the bequests to the defendants, being a bequest of three negroes to each, and showed that they received under said will, one $1,450, another $1,550, and the third $1,650; also, that the defendants each lived, at the time said will was executed, within one mile of the testator. There was not the slightest proof against the perfect execution and legality of said will, other than may be shown in this bill of exceptions."

The defendants offered to prove the value of the slaves Mary and Daniel in 1848, the amount for which the real and personal property of the testator's estate was sold by the executors, the amount distributed on partial settlements in 1853 and 1856 to Mrs. Prater's two children by her former husband, and the value of the property bequeathed by the testator to his widow; and to read in evidence the portions of the will which had not been read by the plaintiffs, showing a bequest to Mrs. Prater of the two slaves Mary and Daniel. The plaintiffs objected to the admission of each portion of this evidence, and reserved exceptions to the overruling of their objections.

"The court charged the jury, among other things, as follows: '1. That they must look to the proof, to see whether the defendants had made a promise to plaintiffs, such as is alleged in the complaint; and if they are satisfied from the proof that the defendants made the promise as alleged, they must then look to the consideration on which such promise was made. 2. That the compromise of a pending suit is a sufficient consideration to sustain a promise to pay. 3. That to sustain a promise to pay upon a compromise, where there is no suit pending, the plaintiffs must show some reasonable grounds for the claim. 4. That the proof in this suit does not show a pending or existing suit, sufficient to sustain the promise. 5. That the jury must, then, look to the proof, to see whether the plaintiffs had some reasonable grounds for contesting the will. 6. That if they believed from the proof that the plaintiffs had any reasonable grounds for

contesting said will, and that the defendants made the promise as alleged in the complaint, then they must find for the plaintiffs. 7. But, if they were satisfied from the proof that the will was valid, and it was not shown that it was executed under undue influence, and that no ground existed for plaintiffs to contest said will, then the plaintiffs could not recover in this case. 8. That in estimating the amount due to plaintiffs, if they find that a promise was made on sufficient consideration, they must take into consideration the value of the property received by Mrs. Prater from her father, the value of the slaves Mary and Daniel mentioned in said will as a bequest to her, and all that her children by said Lively had received and would receive as distributees under said will. 9. And if they found the value of said negroes Mary and Daniel, and the amount received by Mrs. Prater and her said children under said will, and the amount said children are to receive under said will, to be equal to the share of each of said defendants under said will, less $100, they cannot find for the plaintiffs'."

To each of these charges the plaintiffs excepted, and they now assign as error all the rulings of the court to which they reserved exceptions.

M. J. TURNLEY, and ALEX. WHITE, for appellants.

JAS. B. MARTIN, *contra*.

R. W. WALKER, J.—1. Admitting all the facts which the evidence offered by the plaintiffs tended to establish, there was no suit pending when the promise sued on was made. True, the defendants had propounded the will for probate, notices had been served upon the plaintiffs, and they had employed counsel to contest the will; but they had not, in the only mode authorized by law, made themselves parties to the proceeding, and could not have been held responsible for the costs. Unless they came forward, and became parties in the manner provided by law, the proceeding was simply *in rem*, and not a suit *inter partes*.—Code, § 1634; Blakey's Heirs v. Blakey's Distributees, 33 Ala. 611.

2. The mere existence of a controversy, which has not assumed the form of a pending suit, is not, without more, a sufficient consideration to support a verbal promise made in settlement of it. To sustain such a promise, there must be some reasonable ground for the controversy. Allen v. Prater, 30 Ala. 459; Prater v. Miller, 25 Ala. 320. The promise of the defendants was, therefore, void, unless there was some reasonable ground for the existence of the controversy in the settlement of which it was made.' Hence, any evidence, which tended to show'that there was in fact no reasonable ground of controversy, was competent testimony for the defendants.

3. For the purpose of rebutting the evidence of a consideration for the promise, introduced by the plaintiffs, the defendants had the right to show, if they could, that the provisions of the will were just and reasonable, consonant with the state of the testator's family relations, and such as afforded no well-founded cause of complaint. This, if proved, would be a circumstance conducing, in some degree, to establish the capacity of the testator, and the absence of fraud or undue influence in the execution of the will. Such testimony was, therefore, pertinent to the inquiry, whether the plaintiffs had any reasonable ground for their controversy with the defendants; or, in other words, whether there was any contest or dispute, of which the issue might fairly be considered by both parties as doubtful.—Parsons' Contr. 364. For these reasons, it was proper that the will itself should be before the jury, together with proof of the value of the different legacies and devises contained in it, and of the amount and value of the advancements made by the testator in his life-time to any of his children. There was no error in allowing the defendants, for the purpose here mentioned, to prove the value of the slaves given by the testator in his life-time to the plaintiff Elizabeth, and the amounts received by his grand-children under his will.

4. We must construe the charges of the court in connection with the evidence, and apply then to the contract which, as the record informs us, the proof tended to establish. This contract was, that "defendants would pay to

plaintiffs a sum of money sufficient to make them equal to the share that defendants each received under the will, less $100." Now, although the value of the negroes given by the testator in his life-time to the plaintiff Elizabeth, as well as the amounts received by his grand-children under the will, were, as we have seen, proper to be considered by the jury, in determining whether there was a sufficient consideration for the promise made by the defendants; yet, we think that the court erred in deciding that they should be estimated against the plaintiffs, in ascertaining the amount which would be sufficient to make them equal, less $100, to the shares of the defendants. If the facts were such as the bill of exceptions shows the proof tended to establish, it is plain that the negroes Mary and Daniel were not, at the time the will was executed, the property, or in the possession of the testator; that they could not, therefore, be disposed of by his will; and that in fact they did not, either when the will was executed, or when the promise of the defendants was made, belong to the plaintiffs, or to either of them. Upon the hypothesis that the contract and the facts were such as the evidence conduced to establish, we do not perceive upon what principle the value of these negroes can be taken into the estimate, in determining the amount which, by the contract, the defendants agreed to pay the plaintiffs. To justify this, we must incorporate into the contract an additional stipulation, reasonable enough, perhaps, in itself, but of which no mention whatever is made in the evidence; and we should thus assume the function of modifying, instead of merely construing and enforcing, agreements entered into by persons competent to make their own bargains. It may be that, under the circumstances, slight evidence would be sufficient to show that it was the intention of the parties that the value of these negroes should be considered, in determining the amount which the defendants were to pay the plaintiffs. Our decision is made upon the record as it is presented to us.

The case is still plainer with regard to the amounts received by the children of Mrs. Allen, by her first husband,

Lively, as legatees under the will.  The plaintiffs had no right or interest in these legacies, and unless there was some stipulation in the agreement which would authorize it, or some evidence from which it could reasonably be inferred that such was the intention of the parties, the value of these legacies ought not to enter into the computation necessary to be made in ascertaining the amount to which the plaintiffs are entitled.  The promise was to make *the plaintiffs*—not *the plaintiffs and the children of one of them by a former marriage, together*—equal to the defendants.

For the errors indicated, the judgment is reversed, and the cause remanded.

A. J. WALKER, C. J., not sitting.